IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| TEAMSTERS HEALTH AND WELFARE FUND OF PHILADELPHIA AND VICINITY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MECO TRUCKING COMPANY, <br><br> Defendant. | Civil No. 14-7886 (JS) |

**MEMORANDUM OPINION WITH**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER**[1]

This Memorandum Opinion with Findings of Fact and Conclusions of Law serves as the Court's decision with regard to the non-jury trial of this matter. The Court has jurisdiction over this matter pursuant to 29 U.S.C. §§ 185(a), 1132 and 1145, and 28 U.S.C. § 1367. Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of this Court to hear this matter. For the reasons to be discussed, the Court will enter Judgment in plaintiffs' favor.[2]

---

[1] With the consent of counsel, the Court will only address the two main liability issues in dispute. The Court will not decide at this time the precise sum to be paid by defendant. The parties advised the Court that after its decision is issued the parties should be able to work out their minor issues and then calculate the amount due plaintiffs, if anything. Plaintiffs' Trial Brief ("PTB") states: "The parties agree that once the legal issues are resolved, that a stipulated amount can be determined for damages." PTB at 1, Doc. No. 28.

[2] No live testimony was heard at trial. The Joint Final Pretrial Order ("JFPTO") contains eighteen (18) stipulated facts ("JFPTO at

FINDINGS OF FACT

The plaintiffs are Teamsters Health and Welfare Fund of Philadelphia and Vicinity ("Welfare Fund"), Teamsters Pension Trust Fund of Philadelphia and Vicinity ("Pension Fund"), and Adam H. Garner, Administrator.[3] (Hereinafter the two Funds will be collectively referred to as the "Funds"). Plaintiffs filed this ERISA collection action on December 18, 2014. In brief summary, the Funds are multi-employer Trust Funds that provide pension benefits and medical insurance, among other benefits, to eligible participants who work for contributing employers. Plaintiffs seek to recover from defendant Meco Constructors, Inc. d/b/a Meco Trucking Company ("Meco") alleged delinquent payments due the Funds for the calendar years 2006-2014, plus interest, liquidated damages and attorney's fees and costs.

Meco is an employer that provides hauling and construction services in Southeastern Pennsylvania and New Jersey. Meco employs members of Teamsters Local 384. Meco contracted to pay its union employees wages and benefits pursuant to two sets of Collective Bargaining Agreements. The location and type of work an employee

---

¶__). In addition, the parties stipulated to the testimony their witnesses would present at trial if they testified in person. (Hereinafter "Stip. at __"). The parties agreed their written testimony will be used in lieu of live witnesses and the Court is not bound to accept the truth of the stipulated testimony.
[3] Garner replaced the Administrator named in the complaint, William J. Einhorn, on September 1, 2015.

performed determined which Agreement applied. First, Meco is a party to a series of Collective Bargaining Agreements with Teamsters Local 384, which is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehouseman and Helpers of America. In particular, Meco was a party to the "Material Hauling Agreement" ("MHA") with Teamsters Local 384 for all time periods relevant to this action. A worker was paid pursuant to the MHA when he/she hauled to or from a work site. These workers did not have to be union members and were not required to be paid prevailing wages. There is no geographic limitation under the MHA. Second, Meco was also a signatory to the FHA with Teamsters Local 384 for all relevant periods to this action.[4] See JFPTO at ¶7. The FCA covers work performed in Bucks, Chester, Delaware, Montgomery and Philadelphia Counties. Id. The wage rates in the FCA were designed to be in compliance with prevailing wage requirements.

Pursuant to the FCA, all work performed in the five-county area was subject to its terms. However, Teamsters Local 384 and Meco agreed on a compromise to permit Meco to compete with non-union employers. Pursuant to their agreement, Meco only had to pay its workers pursuant to the FCA when he/she worked "exclusively on a construction job site" in the five-county area. See MHA at

[4] The MHA and FHA will be collectively referred to as the "Agreements."

Article 30. The amount Meco contracted to pay for wages and benefits under the FCA was higher than what was due for work done pursuant to the MHA.

Under the MHA and the FCA, Meco is obligated to submit monthly contributions to the Funds. The amount of contributions due is determined by the terms of the applicable MHA and FCA, but is generally calculated by multiplying the hours worked by the rate in the Agreements. Meco is obligated to submit contribution reports and payments to the Funds the month following the month in which the work was performed. The contribution reports contain Meco's employees' names, social security numbers, hours worked and the total contributions paid. The Funds provide employee benefits to Meco's employees covered under the Agreements, including but not limited to retirement benefits by the Pension Fund and medical, life and disability benefits by the Welfare Fund. Article VI, Section 6 of the Amended and Restated Agreement and Declaration of Trust of the Teamsters Pension Trust Fund of Philadelphia and Vicinity permits the Pension Fund to conduct payroll audits of contributing employers, including Meco. Section 9(e) of the Agreement and Declaration of Trust of the Teamsters Health and Welfare Fund of Philadelphia and Vicinity permits the Welfare Fund to conduct payroll audits of contributing employers, including Meco.

Plaintiffs' audits for the year 2006-2014 are at issue in the case. On September 28, 2007, Meco was sent a copy of the audit for 2006. Meco disputed the audit which noted a deficiency. On March 12, 2010, Meco was sent a copy of the audit for 2006 to 2009. The audit noted another deficiency which Meco disputes. On December 18, 2014, plaintiffs filed their complaint against Meco seeking payment of contributions based upon the audit results for the period from January 1, 2006 to December 31, 2009. As part of discovery, an audit was conducted for the period from January 1, 2010 to December 31, 2014. The audit reflected another deficiency that Meco disputed.[5] The parties' primary dispute for the time period of January 1, 2006 to December 31, 2014, relates to whether the "cap" on hours to be paid under the MHA applies to work performed under the FCA. The parties' second dispute involves the trigger date for the statute of limitations that applies to plaintiffs' claim.

The first main issue to be decided involves the interpretation of the parties' Agreements. As to the MHA, Article 28, Section A (effective 8/1/2003 to 7/31/2006) states:

> The Employer will contribute to the Teamsters Health & Welfare fund the sum of Four dollars, fifty four and three quarters ($4.5475) dollars for each hour worked by a covered Employee up to the maximum of eight (8) hours per calendar day, or ten (10) hours per calendar day for employees assigned to work a ten hour day, forty (40)

---

[5] The parties agree the claim in plaintiffs' complaint asking for an audit (Count III) is moot.

5

> hours per calendar week and one hundred sixty (160) hours per calendar month.

Each successive MHA has similar language in Article 28, with the exception of the hourly rate. Article 29 of the MHA (effective 8/1/2003 to 7/31/2006) states:

> The Employer will contribute to the Teamsters Pension Fund the sum of Three dollars and three quarters of a cent ($3.075) for each hour worked by a covered Employee up to the maximum of eight (8) hours per calendar day, or ten (10) hours per calendar day for employees assigned to work a ten hour day, forty (40) hours per calendar week and one hundred sixty (160) hours per calendar month[.]

Each successive MHA has similar language in Article 29, with the exception of the hourly rate. As is apparent, the MHA has a cap on the contributions to be paid to the Funds.

As to the FCA, Article VII (effective May 1, 2004 to April 30, 2007) states:

> Section 7.1 For the period beginning May 1, 2004 to April 30, 2005, each Employer shall pay weekly into the Teamsters' Health, Welfare and Insurance Fund, the sum of Four Dollars and Ninety Cents ($4.90) per hour for each hour for which payment has been made to each chauffeur or helper employed by such Employer, including overtime hours. Effective May 1, 2005 ($1.35) to be apportioned among Wages, Welfare and Pension. Effective May 1, 2006 ($1.35) to be apportioned among Wages, Welfare and Pension.

Each successive FCA has similar language in Article VII, with the exception of the hourly rate. Article VIII of the FCA (effective May 1, 2004 to April 30, 2007) states:

> Section 8.1 For the period beginning May 1, 2004 to April 30, 2005, each Employer shall pay weekly into the

> Teamsters' Pension Plan the sum of Five Dollars and
> Seventeen and One Quarter Cents ($5.1725) per hour for
> each hour for which payment has been made to each
> chauffeur or helper employed by such Employer, including
> overtime hours.

Each successive FCA has similar language in Article VIII, with the exception of the hourly rate. Importantly, there is no reference to a cap in the FCA.

As noted, the first main issue to be decided is how to apply the cap referenced in Articles 28 and 29 of the MHA. This is necessary because on some days an employee was paid under the MHA and the FCA. The parties' contract interpretation issue involves Article 30 of the MHA which states:

> <u>Should the covered Employee work exclusively on a construction job site</u>, the covered Employee will then be paid under the terms and provisions of the August 1, 2003 through July 31, 2006 Five-County Agreement executed contemporaneously herewith, which wage rate and fringe fund benefits are strictly limited and restricted to the time restricted to the time spent working on the construction site so situate. However, unless the work comes within the express terms and provisions of the Philadelphia Five (5) County Agreement, it shall not be by that Agreement, but by this Agreement. (Emphasis supplied).

In order to apply the cap referenced in the MHA, Meco added the total number of hours an employee worked. The total included an employee's hours subject to the rates in the MHA (driving to or from a work site) <u>and</u> the FCA (work exclusively on a construction site). Meco argues it "coalesced" the MHA and FCA. Plaintiffs argue only the hours subject to the MHA rate should be added to apply

7

the cap. In other words, an employee's work exclusively on a construction site should not be used to compute the cap.[6]

The second issue to be addressed involves the statute of limitations.[7] As noted, plaintiffs are seeking damages for the time period of January 1, 2006 to December 31, 2014. Plaintiffs filed their complaint on December 18, 2014. The parties do not dispute that ordinarily a six (6) year statute of limitations applies. See Sturgis v. Mattel, Inc., 525 F. Supp. 2d 695, 703 (D.N.J. 2007). Thus, Meco argues, plaintiffs cannot recover any damages for the time period of January 1, 2006 to December 17, 2008.

Plaintiffs acknowledge their claim for damages for 2006 is barred by the statute of limitations.[8] However, plaintiffs argue

---

[6] A simple example illustrates the parties' dispute. The hypothetical fact situation the Court will use involves a Meco employee who works 3 1/2 hours driving to a construction site, then 3 hours on the site, and then drives 3 1/2 hours away from the site. Under Meco's analysis the employee gets paid 7 hours under the MHA and 3 hours under the FCA. However, as to benefits, Meco would only contribute 5 hours under the MHA and 3 hours under the FCA. Therefore, under this hypothetical, although the employee worked 10 hours, Meco's obligation to pay contributions to the Funds would be capped at 8 hours. Under plaintiffs' analysis the employee would be paid the same as under Meco's calculation. However, as to benefits, Meco would pay 7 hours under the MHA and 3 hours under the FHA. Thus, plaintiffs argue, the employee would get paid for 10 hours and Meco would have to pay contributions to the Funds for 10 hours. This is 2 more hours than Meco's calculation. This results from the fact that under plaintiffs' analysis the FHA hours are not used to calculate the cap.
[7] Meco preserved its limitations defense by asserting it as an affirmative defense in its answer. Answer at Affirmative Defense ¶7, Doc. No. 4.
[8] See Trial Transcript ("TT") 52:7 to 53:7; 54:5 to 10.

the period between January 1, 2007 and December 17, 2008 is not barred because the limitations period did not run because of the "discovery rule." Plaintiffs argue the limitations period began to run on March 12, 2010, when the Funds sent Meco a copy of the audit report for 2006 – 2009. Wm. Einhorn Stip. at ¶20. Plaintiffs argue this date triggered the statute of limitations because this is when they learned of Meco's alleged erroneous calculations.

Meco argues the Funds have been aware of Meco's practice since at least as early as 1999 and no later than 2004. It points out that the Funds audited Meco for the calendar year 1999 and issued an audit report on January 30, 2004. The audit report noted the same reason for the deficiency of $178.18 that is at issue in this case. In addition, Meco's prior counsel pointed out to the Funds in a letter dated January 21, 1999, that the MHA and FCA "coalesced." Defense Trial Exhibit ("DExh.") 2. Defendant also points out plaintiffs knew when they sent out the 2006 audit on September 28, 2007, how Meco calculated the cap. Therefore, Meco argues, plaintiffs knew or should have known prior to December 18, 2008 about its claim against Meco, and, therefore, plaintiffs' claim prior to December 18, 2008 is barred.

CONCLUSIONS OF LAW

1. Contract Interpretation Issue

The general principles of contract construction that apply to the parties' dispute are relatively straightforward. Collective

Bargaining Agreements, including those established under ERISA plans, are interpreted according to ordinary principles of contract law. M&G Polymers USA, LLC v. Tackett, __U.S.__, 135 S. Ct. 926, 933 (2015). In this regard the Court must determine and implement the intention of the parties. Tessmar v. Grosner, 23 N.J. 193, 201 (1957). It is the objective, not subjective, intent of the parties the Court must determine, as manifested in the language of their contracts in light of the circumstances surrounding their execution. Dome Petroleum Ltd. V. Employers Liability Ins. Co. of Wisc., 767 F.2d 43, 47 (3d Cir. 1985).

The first step in the Court's analysis is to determine if the relevant contract language is clear or ambiguous. Schor v. FMS Financial Corp., 357 N.J. Super. 185, 191 (App. Div. 2002). An ambiguity exists if the terms of a contract are susceptible to at least two reasonable alternative interpretations. Id. To determine if an ambiguity exists the Court must examine the parties' contracts as a whole. The Court should not torture the language in contracts to create an ambiguity where one does not exist. Id. Ultimately the Court's task is to ascertain the parties' intention from the language in their contract taken in its entirety, "the situation of the parties, the attendant circumstances, and the objects the parties were [attempting] to attain." Celanese Ltd. v. Essex County Improvement Authority, 404 N.J. Super. 514, 528 (App. Div. 2009).

Contract provisions should be "read as a whole, without artificial emphasis on one section, with a consequent disregard for others." Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 333 N.J. Super. 310, 325 (App. Div. 2000), aff'd, 169 N.J. 135 (2001). Words and phrases should not be isolated but instead should relate to the context and contractual scheme as a whole and given the meaning that comports with their probable intent and purpose. Newark Publishers' Ass'n v. Newark Typographical Union, No. 103, 22 N.J. 419, 426 (1956). The Court, of course, understands that a contract should be interpreted in a common sense manner. Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009).

The Court finds that the term "work exclusively on a construction job site" in Article 30 of the MHA is ambiguous. The term is not specifically defined in the MHA, nor is the term referred to in the FCA. Plaintiffs and Meco both present reasonable interpretations for how the cap in the MHA should be computed. Thus, the Court now has to interpret the term "exclusively" in Article 30 of the MHA and decipher the parties' intention.

No persuasive evidence has been submitted by plaintiffs or Meco regarding the parties' contemporaneous negotiations regarding the cap issue. Thus, the Court is left to base its decision primarily on the language of the Agreements and the circumstances attendant to the execution of the Agreements. Based on the evidence in the record, the Court rules in plaintiffs' favor on the contract

interpretation issue. This is primarily based on the fact there is no language in the Agreements that says the Agreements should "coalesce." Since only the MHA refers to a cap, the most reasonable interpretation is that only the hours subject to the MHA are subject to the cap. Since the FCA does not refer to a cap, it is reasonable to interpret its terms to hold that hours paid pursuant to the FCA are not subject to the MHA cap. The Agreements contain no language supporting Meco's view that the hours worked under the MHA and FHA should be combined to compute a cap that only exists in the MHA. The Court will not read into the parties' Agreements terms that do not exist.

If the parties intended for the cap in the MHA to be subject to hours paid under the FCA, they could have and should have included specific language to this effect in the MHA and/or FCA, or in their separate written agreement. <u>See</u> August 13, 2007 Agreement between Local 384 and Meco at 1, Doc. No. 1-6. This was not done. Teamsters Local 384 could have insisted that Meco pay its workers under the FHA for all work performed in the five-county area. However, Local 384 accommodated Meco's business concerns when it agreed to accept lower wages unless work was done exclusively on a construction job site in the five-county area. There is no evidence Local 384 also agreed to forego some of their FCA benefits, (<u>i.e.</u>, benefit contributions) which would be the case if the MHA cap applied to hours worked under the FCA. Needless

to say, the Court disagrees with Meco's suggestion that plaintiffs' interpretation of the Agreements is nonsensical. Meco Trial Brief at 10-11, Doc. No. 29. There is nothing nonsensical about the fact that Local 384 made a concession to Meco on wages but not on benefit contributions.

Meco provides no persuasive evidence to support its position that a term that does not exist in writing should be read into the parties' Agreements. Mr. Foy's January 21, 1999 letter (Defense Exhibit ("DExh.")) 2 is nothing more than Meco's attorney's interpretation of the parties' Agreements. Mr. Foy provided no evidence to support his interpretation. Further, plaintiffs disputed Foy's interpretation. Plaintiffs' Trial Exhibit 13.

The Court rejects Meco's argument based on Article 30 that a worker who worked part of a day on a five-county construction site and part of the same day hauling to or from the site, should only be paid contributions pursuant to the MHA. TT 29:1-9. Meco posits this result is compelled by the "exclusivity" language in Article 30. However, it was not until relatively recently that Meco raised this argument. The fact that Meco did not take this position for a substantial number of years is evidence that Meco is mis-interpreting the parties' Agreements.[9] Further, Meco may be basing

---

[9] Meco acknowledges that its present argument is inconsistent with its past practice. Meco's Trial Brief states: "Meco paid its Teamster employees under the Five County Agreement (including both higher wage rates and benefits rates) for only time that the

13

its argument on how the term "exclusivity" is interpreted in the "industry." However, there are no facts in the record to support the custom or practice in the industry.[10] In addition, it is not insignificant that Meco's Agreement to be bound by the terms and conditions of the FHA (see August 13, 2007 Agreement at 1) does not contain "exclusivity" language. The scope of work in the FCA applied only to Meco's employees "during the period of time while they perform work on a construction site or project." Id. This evidences Meco should pay FCA benefit contributions for all FCA work. The Court agrees with plaintiffs that the term "exclusively on a construction job site" is used to distinguish on-site work from material hauling. See PTB at 13-14. The Court does not accept Meco's argument that unless a worker is employed exclusively on a construction job site for a complete day, even if he works a few hours on a job site, contributions should not be paid under the FCA.

---

employee was physically located at a job site." Meco Trial Brief at 4-5, Doc. No. 29.

[10] Given the Court's interpretation of the parties' Agreements, there is no need to decide whether Meco's interpretation violates the Pennsylvania Prevailing Wage Act of 1961, 43 P.S. § 165-1, et seq. The Court notes that Meco's prevailing wage argument is based in part on its conclusion that "[t]he facts in this case are that drivers are hauling to and from remote locations. They are not driving to locations adjacent to the job site, or to borrow pits (or any other location) devoted exclusively to the prevailing wage project." Meco Reply Brief at 4, Doc. No. 30. However, there are no facts in the record to support this statement.

14

Further, the Court finds that the specific language used in Article 30 supports plaintiffs' position. Pursuant to Article 30, wages and "fringe fund benefits" under the FCA "are strictly limited and restricted to the time spent working on the construction job site so situate." The Court finds this language evidences an intent that a worker must be paid FCA benefits for all hours worked on a job site. This would not occur under Meco's interpretation of the FCA because a worker's benefits would be subject to the MHA cap. Further, Articles VII and VIII of the FCA provide that benefit contributions have to be paid "per hour for each hour for which payment has been made[.]" Again, this evidences that Meco must pay benefit contributions for each FCA hour worked. This does not occur under Meco's interpretation of Article 30.

2. <u>Statute of Limitations</u>

As noted, the parties agree a six (6) year statute of limitations applies to plaintiffs' claims. Therefore, since plaintiffs filed their complaint on December 18, 2014, all claims prior to December 18, 2008 would ordinarily be barred. As applicable to plaintiffs' claims, this includes the time period of January 1, 2006 to December 17, 2008. Plaintiffs, however, argue their claim from January 1, 2007 to December 17, 2008 is not barred by the statute of limitations because of the discovery rule.

For the following reasons the Court finds that plaintiffs' claims prior to December 18, 2008 are barred by the statute of

limitations. As noted, plaintiffs argue the limitations period from January 1, 2007 – December 17, 2008 did not begin to run until it completed its audit for the time period. Plaintiffs argue this is when it learned of Meco's deficiency. Although the exact date the audit was completed is not known, plaintiffs argue for March 12, 2010, which is the date the audits for 2007-2009 were sent to Meco.

Under New Jersey law the discovery rule operates as an exception to the six year statute of limitations. Nix v Option One Mortg. Corp., C.A. No. 05-03685 (RBK), 2006 WL 166451, at *10 (D.N.J. Jan. 2006). The discovery rule is an equitable principle under which "the accrual of a cause of action is delayed until the injured party discovers, or by the exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim." Staub v. Eastman Kodak Co., 320 N.J. Super. 34, 42 (App. Div. 1999)(citation and quotation omitted). Since "the discovery rule imposes on plaintiffs an affirmative duty to use reasonable diligence to investigate a potential cause of action, and thus bars from recovery plaintiffs who had 'reason to know' of their injuries, the discovery rule generally does not apply to contract actions." County of Morris v. Fauver, 153 N.J. 80, 110 (N.J. 1998)(citation and quotation omitted).

The Court rejects plaintiffs' argument that the limitations period began to run on March 12, 2010. The applicable case law

requires that plaintiffs must use reasonable diligence to investigate a potential cause of action. The Court finds that if plaintiffs exercised reasonable diligence they would have discovered Meco's deficiencies shortly after Meco submitted their monthly summaries. No good reason has been presented for why plaintiffs had to wait until 2010 to audit Meco's submissions from January 1, 2007 – December 17, 2008. This is especially true since plaintiffs were on notice since 1999 that Meco applied the MHA cap to hours worked under the FCA. Further, it would be fundamentally unfair to rule that the statute of limitations did not run until plaintiffs completed and sent its audit to Meco on March 12, 2010. This permits plaintiffs to control when the limitations period begins to run, and could result in an indefinite suspension of the limitations period. Instead of this inequitable result, the Court holds the limitations period began to run after plaintiffs received Meco's paperwork documenting its benefits calculations. Thus, the portion of plaintiffs' claim prior to December 17, 2008 is barred by the statute of limitations.[11]

---

[11] Since plaintiffs were on notice of Meco's method of calculating the cap before December 18, 2008, the Court will not hold that the limitations period was triggered in January 2009, when plaintiffs presumably received Meco's December 2008 calculations.

CONCLUSION

Accordingly, for the foregoing reasons, it is hereby ORDERED this 2nd day of June, 2017, that Judgment will be entered in favor of plaintiffs on the liability issues tried by the Court. The Judgment shall incorporate the following conclusions of law:

1. The hours an employee worked pursuant to the Five County Agreement should not be included when computing the cap set forth in Articles 28 and 29 of the Material Hauling Agreement.

2. Plaintiffs' claim from January 1, 2016 to December 17, 2008, is barred by the statute of limitations; and it is hereby

ORDERED that by June 23, 2017, the parties shall submit a proposed Judgment to the Court, incorporating the precise amount due plaintiffs; and it is further

ORDERED that plaintiffs' attorney's fee and cost claim shall be submitted in accordance with the applicable Federal and Local Rules of Civil Procedure.

                                          s/Joel Schneider
                                          JOEL SCHNEIDER
                                          United State Magistrate Judge

Dated: June 2, 2017